UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYNAMIC FLUID CONTROL<br>(PTY) LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 10-cv-7555 |
| INTERNATIONAL VALVE | ) | |
| MANUFACTURING, LLC; | ) | Judge John W. Darrah |
| INTERNATIONAL VALVE | ) | |
| MARKETING, LLC; | ) | |
| RUDOLPH J. LANG II; | ) | |
| RUDOLPH J. LANG III; | ) | |
| WILLIAM T. LANG; and | ) | |
| PEGASUS AIRLINE GROUP, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dynamic Fluid Control (PTY) Limited ("DFC"), brought this action

against the following Defendants: International Valve Manufacturing, LLC;

International Valve Marketing, LLC; Rudolph J. Lang II; Rudolph J. Lang III;

William T. Lang; and Pegasus Airline Group, LLC. DFC claims that Defendants are

liable to DFC under a number of theories in connection with Defendants' marketing and

sale of certain industrial valve products. Count I is for patent infringement; Count II is

for federal trademark infringement under the Lanham Act; Count III is for federal trade-

dress infringement under the Lanham Act; Count IV is for federal unfair competition

under the Lanham Act; Count V is for violations of the Illinois Uniform Deceptive Trade

Practices Act; Count VI is for Illinois common-law unfair competition; Count VII is for

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act;

Count VIII is for violations of the Illinois Trade Secrets Act; and Count IX is for unjust

enrichment.

Some of the Defendants filed a Motion to Dismiss some of the claims against

them, as more specifically set out below. William T. Lang "d/b/a Pegasus Airline

Group, LLC" filed a separate Motion to Dismiss. A consolidated briefing schedule was

entered. As discussed below, both motions are denied in their entirety.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true

for purposes of resolving these motions to dismiss.

DFC is a South African corporation that develops, manufactures, and supplies

valve products. Compl. ¶ 2. Defendant Rudolph Lang III is the principal of International

Valve Manufacturing, LLC and International Valve Marketing, LLC (collectively,

"IVM"), both of which are Illinois corporations in the business of manufacturing or

marketing valves. Compl. ¶¶ 6, 12, 20, 21. Defendants Rudolph Lang II and

William Lang are, or were, IVM employees with managerial responsibilities. Compl.

¶¶ 22-25. Pegasus Airline Group, LLC is a distributor and/or reseller of valve products.

Compl. ¶ 13. DFC alleges "[u]pon information and belief" that Pegasus Airline Group,

LLC has a principal place of business in Naperville, Illinois. Compl. ¶ 11.

The three Langs are former managerial employees of International Valve

Marketing, Inc., a former distributor of DFC's patented valve products. Compl. ¶¶ 10,

14-16. Each of the three Langs was or is also employed by International Valve

Marketing, Inc.'s successor corporation, International Valve Components, Inc. ("IVC").

Compl. ¶¶ 10, 17-19.[1] IVM and IVC share a website:

http://www.internationalvalve.com. Compl. ¶ 26.

DFC is the successor to Mulric Hydro Project (Pty) Ltd., the original assignee of a

United States patent for an air-release valve: Patent No. 5,511,577 (the "'577 patent").

Compl. ¶¶ 2, 35. DFC's patented valve products are generally used to alleviate gas

buildup in water and sewage pipelines. Compl. ¶ 42.

DFC is also the registrant or assignee of United States Trademark Registration

Numbers 1,987,961 and 3,048,642 for the mark "VENT-O-MAT®" for various types of

valves and valve parts (collectively, the "VENT-O-MAT mark"). Compl. ¶ 37. Since at

least 1995, DFC has manufactured, distributed, advertised, and sold to customers

throughout the world, including customers in the United States and Illinois, valves

covered by the '577 patent. Compl. ¶ 41. These valves have been distributed, advertised,

and sold to consumers under the VENT-O-MAT mark. Compl. ¶ 41.

Additionally, DFC alleges that its products exhibit nonfunctional, distinctive trade

dress:

> In connection with sales of its valves, DFC has also developed and
> adopted a unique and distinctive overall housing and appearance for its
> valves such that consumers and the trade are easily able to identify such
> products as originating from DFC.
>
> These unique and overall distinctive characteristics of DFC valve products
> include the distinctive appearance, shape, contours, and in numerous cases
> color scheme. . . . DFC's Trade Dress is not merely functional. . . . DFC
> has extensively advertised and promoted its Mark and Trade Dress. As a

---

[1] International Valve Marketing, Inc. and IVC are separate and distinct entities
from parties defendant IVM.

result of the care and skill exercised by DFC and the superior quality of its valves, and because of the extensive advertising, promotion, sales, and public acceptance of DFC's Mark and Trade Dress, DFC's valves have acquired a fine and valuable reputation. The public recognizes DFC's Mark and Trade Dress and identify the Mark and Trade Dress with DFC's products. DFC's valves have acquired distinctiveness and symbolize the fine reputation and goodwill that DFC has created by distributing and selling products of high quality and by fair and honorable dealing with the trade and public in the distribution, sale, and support of its valve products.

Compl. ¶¶ 47-49.

DFC has not licensed the '577 patent, the VENT-O-MAT mark, or its trade dress to any of the Defendants or otherwise authorized any of the Defendants to use the alleged intellectual property at issue. Compl. ¶¶ 45-46, 50.

While employed by International Valve Marketing, Inc., Rudolph Lang II and Rudolph Lang III were actively involved in working with DFC personnel to market and sell patented valve products under a distributorship agreement; and they were exposed to DFC's trade secrets and other intellectual property relating to DFC's "valves, software, business practices, and manufacturing know-how." Compl. ¶¶ 54-57.

In 2009, DFC learned that International Valve Marketing, Inc. was marketing and selling unauthorized valve products that are substantially identical to DFC's patented valves under DFC's VENT-O-MAT mark. Compl. ¶ 58. DFC reacted by terminating its distributorship agreement. Compl. ¶ 59.

Rudolph Lang II and Rudolph Lang III then established IVM to market, make, import, and/or sell products, including valves that are substantially identical in appearance, structure, and functionality to DFC's patented valves. Compl. ¶ 60. Like DFC's valves, IVM's are marketed and sold for use in water and sewage pipelines.

4

Compl. ¶ 61. They are sold under the name, VENT-TECH, in the same channels of trade as DFC's VENT-O-MAT valves. Compl. ¶¶ 62-63. Specifically, IVM's valves are displayed on the www.internationalvalve.com website in the same location that DFC's VENT-O-MAT products were displayed and sold previously. Compl. ¶ 64.

DFC claims that the VENT-TECH valves appropriate the look and overall appearance of DFC's trade dress and that they are likely to cause confusion with DFC's VENT-O-MAT valves. Compl. ¶¶ 66-34. Pictures of DFC's VENT-O-MAT valves and IVM's VENT-TECH valves are attached to DFC's Complaint. *See* Compl. Exs. 3-4.

Defendants continue to willfully make, offer, use, and/or import unauthorized valve products with substantially identical structure and function to DFC's patented valves with substantially identical appearance to DFC's trade dress. Compl. ¶¶ 74-76, 81-83.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."

5

*Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

Certain causes of action – including those based on fraud – must be pled with particularity pursuant to Rule 9(b). Such claims require the complaining party to plead the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Additionally, a complaint should be dismissed when the summons or service of process is inadequate. *See* Fed. R. Civ. P. 12(b)(4), (5). When the sufficiency of service is challenged by a defendant, the burden is on the plaintiff to show that service was proper. *Chapman v. U.S. Marshal for N. Dist. of Ill.*, 584 F. Supp. 2d 1083, 1090 (N.D. Ill. 2008) (citing *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 453 (7th Cir. 2000)). Where there has not been sufficient service of process, the court does

not have personal jurisdiction over the defendant. *Rabiolo v. Weinstein*, 357 F.3d 167, 168 (7th Cir. 1996).

## ANALYSIS

Pursuant to Rule 12(b)(6), all Defendants except Pegasus Airline Group, LLC (hereinafter, "Defendants") move to dismiss all counts except Count I, which alleges that Defendants have directly and indirectly infringed the '577 patent. Each Count is discussed below. Defendant William T. Lang d/b/a Pegasus Airline Group, LLC filed a separate Motion to Dismiss, arguing that no such entity as "Pegasus Airline Group, LLC" exists and that all claims against that nonexistent entity should be dismissed pursuant to Rule 12(b)(2), (4), and (5). That motion is discussed separately at the end of this Opinion.

### Count II

Count II is for infringement of the registered VENT-O-MAT mark, pursuant to 15 U.S.C. § 1114. Defendants' only challenge to this claim is based on standing. Defendants assert that only the "registrant" of a trademark may bring an action for infringement under the Lanham Act and cite to records of the United States Patent and Trademark Office ("USPTO") showing that the VENT-O-MAT marks are registered to "DFC Water (Pty) Ltd.," not to the DFC entity involved in this action.

In the Complaint, DFC alleges that it is the "registrant/assignee" for the VENT-O-MAT marks. *See* Compl. ¶ 37. The Lanham Act specifically provides that "[t]he terms 'applicant' and 'registrant' embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. DFC has

7

sufficiently alleged standing to enforce the VENT-O-MAT marks. Defendants' motion is denied as to Count II.

## Count III

Count III is for trade-dress infringement, pursuant to 15 U.S.C. §§ 1114 and 1125. Defendants argue that the claim must be dismissed because the Complaint does not provide sufficient allegations as to the elements of protectable trade dress.

To prevail on a claim for trade-infringement, DFC will be required to prove (1) that its trade dress "is either inherently distinctive or has acquired secondary meaning" and (2) that the similarity of Defendants' trade dress "causes a likelihood of confusion on the part of consumers as to the source of affiliation of the products." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998).

Citing *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003) (*Best Cellars*), Defendants assert that DFC is required to specifically define the list of elements of its claimed trade dress. Their argument is misplaced. The district court in *Best Cellars* was ruling on a motion for summary judgment; the motion pending before this Court is a motion to dismiss. Because DFC's allegations are accepted as true at this stage of the proceedings, DFC need only allege facts to show that it could prevail on its claim. Defendants' arguments that DFC's alleged trade dress is functional or not distinctive are similarly misplaced because they require factual determinations that are premature at this stage in the litigation.

DFC has alleged that its trade dress is comprised of a "distinctive shape, contours, and in numerous cases color scheme" (Compl. ¶ 48); that its valves have a "unique and

8

distinctive housing and appearance" (Compl. ¶ 47); that "Defendants' use of DFC's

Trade Dress is likely to cause confusion" (Compl. ¶ 110); and that "DFC's Trade Dress is

not merely functional" (Compl. ¶ 48). Although these allegations are somewhat

conclusory, DFC has also attached photographs of products allegedly exhibiting its

protectable trade dress. *See* Compl. Ex. 3. When the photographs are viewed in

connection with DFC's allegations, DFC's claim for trade-dress infringement is sufficient

to put Defendants on notice as to what DFC believes is protected. Defendants' motion is

denied as to Count III.

*Count IV*

Count IV asserts a claim for unfair competition pursuant to 15 U.S.C. § 1125(a).

Defendants argue that DFC fails to plead a likelihood of confusion between IVM's and

DFC's valves and that the claim falls short of the heightened pleading standard required

by Federal Rule of Civil Procedure 9(b).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Whether the rule applies depends on the particular factual allegations at issue.

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations

omitted). "A claim that 'sounds in fraud' – in other words, one that is premised upon a

course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading

requirements." *Id.* (citations omitted).

Claims brought under 15 U.S.C. § 1125(a) are of two types: "likelihood of

confusion" claims under § 1125(a)(1)(A) and "false advertising" claims under

§ 1125(a)(1)(B). To state a claim for false advertising under § 1125(a), a plaintiff must allege: (1) that the defendant made a false statement of fact about its own or another product in commercial advertisement; (2) that the statement deceived or has the tendency to deceive a substantial portion of those persons who perceive the advertisement; (3) that the deception is likely to influence purchasing decisions; (4) that the defendant caused the advertisement to enter interstate commerce; and (5) a likelihood of injury. *Ill. Tool Works, Inc. v. Chester Bros. Machined Prods., Inc.*, No. 05 C 5002, 2006 WL 2191982, at *4 (N.D. Ill. July 27, 2006) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). Because a claim of false advertising under § 1125(a) involves false statements and deception, some courts have held that such claims must meet the heightened fraud standard of Rule 9(b). *See MPC Containment Sys., Ltd. v. Moreland*, No. 05-C-6973, 2006 WL 2331148, at *2 n.1 (N.D. Ill. Aug. 10, 2006) (holding, *sua sponte*, that a claim for unfair competition based on fraudulent misrepresentations made during the promotion of the defendants' products must adhere to the heightened standard set forth in Rule 9(b) for claims sounding in fraud); *Platinumtel Comm'cns, LLC v. Zefcom, LLC*, No. 08-cv-1062, 2008 WL 5423606, at *1 (N.D. Ill. Dec. 30, 2008) (applying Rule 9(b) standard to false-advertising claims).

On the other hand, a claim that defendant's use of a mark is likely to cause confusion does not necessarily involve any fraudulent conduct. To prove such a claim under § 1125(a), "a plaintiff must show (1) that its trademark may be protected and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff." *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434,

10

439 (7th Cir. 1990); *see also Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 864 (N.D. Ill. 2009) (holding allegations sufficient to survive motion to dismiss where plaintiffs alleged the mark infringed, the time frame, a similar mark used by defendants, and the type of infringing activities). Because there is no requirement to prove fraud for likelihood-of-confusion claims, there is no requirement to allege fraud. Thus, the heightened pleading requirement set forth in Rule 9(b) does not apply to this theory.

Here, DFC claims that DFC's "patented technology, trade secrets, know-how, Trade Dress, and a name confusingly similar to DFC's registered Mark (VENT-TECH vs. VENT-O-MAT)" have been willfully adopted by Defendants for use in interstate commerce in connection with the sale and promotion of valve products and that this unlawful adoption and use of those "imitations" is "likely to cause confusion, to cause mistake, and/or to deceive the public." Compl. ¶¶ 116-118. DFC goes on to allege, "Through the promotion, advertising, and sale of products having such a confusingly similar appearance, Defendants have unlawfully simulated, appropriated, and infringed DFC's rights and its proprietary Trade Dress and registered Trademarks. Such conduct and appropriation constitute a false description or representation of DFC's Trade Dress and Trademarks, and/or a false designation of origin in violation of 15 U.S.C. § 1125(a)." Compl. ¶ 119.

Although DFC's allegations are rather broad and somewhat ambiguous, DFC affirmatively represents in its brief in opposition to Defendants' Motion to Dismiss that it is not purporting to state a false-advertising claim. DFC Opp'n Br. (Docket No. 22), at 6 ("DFC's claim, on the other hand, is based on a likelihood of customer confusion and

does not contain allegations of fraud."). DFC's allegations are sufficient to put Defendants on notice of DFC's claim that consumers are likely to be confused as to the source of Defendants' VENT-TECH valves because of their similarity to DFC's VENT-O-MAT products and allegedly protected trade dress. Defendants' Motion to Dismiss is denied as to Count IV.

*Count V*

Count V asserts a claim under the Illinois Uniform Deceptive Trade Practices Act ("DTPA"), codified at 815 ILCS 510/2. Defendants again assert that Rule 9(b) applies and that DFC's allegations fall short.

Among other things, the DTPA provides that "[a] person engages in a deceptive trade practice when . . . the person: . . . causes a likelihood of confusion or misunderstanding as to the source, sponsorship . . . [etc.]." 815 ILCS 510/2(a)(2). Certain fraudulent conduct – using deceptive representations about the source or quality of the goods, for example – also violates the DTPA. *See, e.g.*, 815 ILCS 510/2(a)(4)-(6). The fact that *some* DTPA allegations sound in fraud and must be pleaded with specificity does not mean that *all* DTPA allegations require heightened specificity. Indeed, where a DTPA claim is based on a likelihood of confusion, courts have held that the ordinary notice-pleading standard applies. *See, e.g., Publ'ns Int'l, Ltd. v. Leapfrog Enters., Inc.*, No. 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002) (holding that DTPA allegations regarding a likelihood of confusion did not necessarily constitute "fraud" such that Rule 9(b) would apply); *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1233-34 (N.D. Ill. 2005) (holding that computer user was not required to plead with

12

particularity DTPA claim that defendants caused spyware to be downloaded onto his personal computer without his consent, notwithstanding use of the words "false," "falsely," "deceive," and "mislead").

Defendants also argue that DFC's allegations are too conclusory to state a valid claim for relief. The Complaint clearly alleges what is infringed and what infringes. Photos of the allegedly protected property and infringing products are attached to the Complaint. DFC has provided sufficient notice of its claims to allow Defendants to defend themselves. DFC's DTPA claim essentially mirrors its Lanham Act claim; and where factual allegations underlying a Lanham Act claim also form the basis for a claim under the DTPA, the DTPA claim "must rise or fall based on the Lanham Act claim." *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998). The Motion to Dismiss is denied as to Count V.

### Count VI

Count VI purports to state a claim for unfair competition under Illinois common law. Defendants first argue that because the DTPA claim should be dismissed, the common-law claim for unfair competition should fall with it. As discussed above, however, DFC has stated a claim under the DTPA.

Defendants next argue that common-law unfair competitions can only be brought in the "most egregious of cases" and that DFC fails to allege this to be such a case. Contrary to Defendants' position, there is no express requirement that a claim for common-law unfair competition must allege "egregious" conduct. Defendants rely exclusively on *BlueStar Management LLC v. The Annex Club, LLC*, No. 09 C 4540,

13

2010 WL 2802213, at *9 (N.D. Ill. July 12, 2010), in which the district court quoted

*Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110 (7th Cir. 1990) (*Wilson*), as stating

that common-law unfair competition claims are only allowed in the "most egregious of

cases." However, the quoted language does not actually appear in *Wilson*. Indeed, the

word "egregious" does not appear anywhere in that opinion.

The common-law tort of unfair competition has largely been codified by the

DTPA, so it is unclear what, if any, purpose is served by DFC's seemingly redundant

claim. *See MJ & Partners*, 10 F. Supp. 2d at 929 ("A common law unfair competition

claim need not be separately addressed since it is codified by the [DTPA].").

Nonetheless, "certain causes of action for unfair competition may still be found outside

the statute." *Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2002 WL

31507174, at *7 (N.D. Ill. Nov. 8, 2002). Defendants' Motion to Dismiss is denied as to

Count VI.

### *Count VII*

Count VII asserts a violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), codified at 815 ILCS 505 *et seq.* Defendants again

argue that DFC's claim sounds in fraud and must be pleaded with specificity, and

Defendants' argument is again unpersuasive. The ICFA expressly provides that "the use

or employment of any practice described in Section 2 of the [DTPA i.e., the provision

regarding likelihood of confusion] in the conduct of any trade or commerce [is] hereby

declared unlawful whether any person has in fact been misled, deceived or damaged

thereby." 815 ILCS 505/2.

14

When evaluating claims on their merits, courts analyze DTPA claims and ICFA claims under the same standard. *See, e.g., Trans Union, LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, at *11-12 (N.D. Ill. 2001) (explaining that same analysis applied to claims under Lanham Act, DTPA, ICFA, and common law of unfair competition); *accord Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.,* 500 F. Supp. 2d 770, 774 (N.D. Ill. 2007); *see also Lincoln Diagnostics, Inc. v. Panatrex, Inc.,* No. 07-cv-2077, 2008 WL 2246960, at *18 (C.D. Ill. May 29, 2008) ("[B]ecause the admitted facts show that Defendant violated the [DTPA], Defendant has also violated [the ICFA]."). DFC's ICFA claim is based on the same underlying conduct as its DTPA claim. Defendants' Motion to Dismiss is denied as to Count VII.

### Count VIII

Count VIII asserts a violation of the Illinois Trade Secrets Act ("ITSA"), codified at 765 ILCS 1065 *et seq.* Defendants argue that DFC fails to sufficiently allege the existence of a trade secret or its misappropriation.

A trade secret is information that is (1) "sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use" and (2) "the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." *See* 765 ILCS 1065/2(d). "Misappropriation" involves the improper acquisition of a trade secret or the disclosure or use of a trade secret without consent. 765 ILCS 1065/2(b).

Defendants asserts that this Court should follow the lead of *Nilssen v. Motorola, Inc.,* 963 F. Supp. 664, 672 (N.D. Ill. 1997), and dismiss DFC's ITSA claim for failure to

identify any specific trade secrets that were misappropriated. The ITSA claim in *Nilssen*, however, was before the court on summary judgment; and the *Nilssen* court stated that the plaintiff could not withstand a motion for summary judgment by simply listing general areas of information containing unidentified trade secrets (though the court ultimately held that the level of detail was sufficient). *Id.* at 672-73.

Here, DFC need only allege facts to put Defendants on notice of the claims against them. DFC has done so, alleging that certain proprietary information relating to "analytic software; business practices; manufacturing know-how; client lists; pricing structure; and strategic timing" constituted protectable trade secrets (Compl. ¶ 143); that that information is not readily available from any public source (Compl. ¶ 146); that DFC "used reasonable efforts to maintain the secrecy and confidentiality" of that information (Compl. ¶ 147); that Rudolph Lang II and Rudolph Lang III acquired those trade secrets while under a distributorship agreement with DFC "under circumstances giving rise to a duty to maintain the secrecy of DFC's trade secrets" (Compl. ¶¶ 148-149); and that they misappropriated those secrets in connection with a competing business venture (Compl. ¶¶ 153-154). These allegations are sufficient to put Defendants on notice of the claim against them. At this stage in the litigation, nothing more is required. Defendants' Motion to Dismiss is denied as to Count VIII.

### Count IX

Count IX is for unjust enrichment. Defendants assert that it should be dismissed because Illinois courts do not recognize it as a separate cause of action. They cite *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 834 (N.D. Ill. 2009), which states that

16

"unjust enrichment 'is not a separate cause of action that, standing alone, would justify an action for recovery.'" (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (2008)). *Siegel* also stated as follows: "To establish an unjust enrichment claim under Illinois common law, a plaintiff must show: (1) the defendant has 'unjustly retained a benefit to the plaintiff's detriment' and (2) the defendant's 'retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Id.* (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989)). Thus, *Siegel* does not hold that a claim for unjust enrichment will never be recognized; only that such a claim is dependent on other claims. In this case, Defendants' Motion to Dismiss was unsuccessful as to DFC's other claims. Therefore, the Motion to Dismiss is denied as to Count IX, as well.

### *Pegasus Airline Group, LLC*

The gist of William T. Lang's separate Motion to Dismiss is that there is no such entity as Pegasus Airline Group, LLC. Therefore, argues Lang, any summons bearing that name was deficient, and any purported service of that summons on him was insufficient.

Lang specifically represents that no entity bearing the name Pegasus Airline Group, LLC has ever been *incorporated* and asks the Court "to take judicial notice of the fact that there is no entity registered with the Illinois Secretary of State (or in any other jurisdiction) as "Pegasus Airline Group, LLC" with a principal place of business in Naperville, Illinois." Mem. in Support of Pegasus Mot. to Dismiss (Docket No. 25),

at 4-5. He also asks the Court to note that the docket does not contain any evidence that service has been effected on Pegasus Airline Group, LLC.

Lang's arguments are misplaced. First, because the named defendant is not a corporation but a limited liability company, any argument that the defendant is not incorporated is irrelevant. Second, Lang offers no evidence in support of his assertion that no such entity exists and nothing beyond his own representations of which he wants the Court to take judicial notice.[2] Third, "[f]ailure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(l).

Cases cited by Lang in which a named defendant comes forward to challenge the sufficiency of process against him are inapposite. If Pegasus Airline Group, LLC does not exist, it does not exist. A nonexistent entity cannot come forward to challenge any deficient service made upon it, and no judgment can be entered against it. If, on the other hand, Pegasus Airline Group, LLC is simply a name by which Lang does business (with an improper LLC designation), then there is no need for separate service because Lang is already a proper defendant in this litigation.[3] Nothing cited by Lang supports the proposition that one defendant (Lang) has standing to challenge the sufficiency of process on another defendant (Pegasus Airline Group, LLC). Accordingly, Lang's Motion to Dismiss is denied.

---

[2] Lang submitted a page from the Illinois Secretary of State's website in connection with his reply brief. This comes too late. Furthermore, the exhibit does not support the purported fact that Pegasus Airline Group, LLC does not exist in any jurisdiction.

[3] An attorney for DFC submitted an affidavit showing that Pegasus Airline Group, LLC has a presence on at least three websites and that Lang identifies himself as the "Owner" and "President" of Pegasus Airline Group, LLC on his online LinkedIn profile. Lang does not challenge service on himself, individually.

## CONCLUSION

For the reasons stated above, *Defendant William T. Lang d/b/a Pegasus Airline Group, LLC's Motion to Dismiss Complaint of Dynamic Fluid Control (PTY) Ltd.* and the remaining Defendants' Motion to Dismiss are both denied in their entirety.

Date: May 17, 2011

JOHN W. DARRAH
United States District Court Judge